**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

AMY SINCAVAGE and MICHAEL
WISNIEWSKI,

     Plaintiffs,

        v.

SCHOTT NORTH AMERICA, SCHOTT
A.G., and ERIC URRUTI,

     Defendants.

NO. 3:18-CV-01231

(JUDGE CAPUTO)

## MEMORANDUM

     Presently before me are the following motions: Motions to Dismiss filed by Defendants Eric Urruti (Doc. 24) and Schott North America ("Schott N.A.") (Doc. 23); a Motion to Sever filed by Schott N.A. (Doc. 29); a Motion to Strike Returns of Service, filed by Schott A.G.[1] (Doc. 31); and a Motion for Alternative Service filed by Plaintiffs Amy Sincavage and Michael Wisniewski (Doc. 34). Urruti's Motion to Dismiss will be denied because Plaintiffs have adequately pled the claim he seeks to dismiss. Schott N.A.'s Motion to Sever will be denied because joinder is proper, and its Motion to Dismiss will be granted in part and denied in part. Plaintiffs' Motion for Alternative Service will be denied as their proposed method of service would not comply with the Federal Rules of Civil Procedure. Finally, Schott A.G.'s Motion to Strike, construed as a motion to dismiss for lack of personal

---

[1]    Plaintiffs correctly note that Schott A.G. failed to file a brief in support of this Motion within the time limit prescribed by Local Rule 7.5—Schott A.G. was two days late. This would normally result in the withdrawal of the Motion. Because of Plaintiffs' new service of process filings, Schott A.G. subsequently filed an additional Motion to Strike the affidavits and returns of service (Doc. 49) and reiterated its prior arguments. This newer Motion has not yet been briefed. The earlier Motion was amply briefed, though, so in the interest of "secur[ing] the just, speedy, and inexpensive determination" of these pre-answer motions, Fed. R. Civ. P. 1, I will consider Schott A.G.'s earlier Motion (Doc. 31) and deny the newer one (Doc. 49) as moot. *See* M.D. Pa. Local Rule 1.3.

jurisdiction and insufficient service of process, will be denied as Plaintiffs have made a prima facie showing of alter ego personal jurisdiction. Plaintiffs will accordingly be permitted to conduct jurisdictional discovery, and the issue personal jurisdiction over Schott A.G. may be revisited at a more appropriate stage in the litigation.

## I. Background

The well-pleaded facts as set forth in Plaintiffs' Amended Complaint[2] (Doc. 16) are as follows:

Schott N.A. is a Maryland corporation that maintains an "Advanced Optics" production facility in Duryea, Pennsylvania. (Doc. 16 at ¶¶ 21, 31). The Duryea facility melts and processes optical and laser glass, among other things. (*Id.* ¶ 43). Schott N.A. is a wholly-owned subsidiary of Schott Corporation, a U.S. holding company, which in turn is a wholly-owned subsidiary of Schott A.G., a German corporation. (*Id.* ¶¶ 26-27). Plaintiffs allege that Schott A.G. "exercises dominant control over the [Duryea facility]" through its corporate structure, and, in particular, Schott A.G. officers who control the Advanced Optics business unit and "Research & Development center." (*Id.* ¶¶ 28, 32, 34). Duryea facility managers, for instance, report directly to Schott A.G. employees in Germany, (*see id.* ¶¶ 19, 49), and Schott A.G. makes final decisions as to production, budgeting, investment, compensation, promotion, and even termination (*id.* ¶¶ 47-48).

Plaintiff Michael Wisniewski was hired as an accounting manager at the Duryea facility in 1991, and at the time of his discharge "held the position of Duryea Site Controller." (*Id.* ¶¶ 18, 49). Plaintiff Amy Sincavage was hired as the "Research and Development Controller" for the Duryea facility in 2007, and was supervised by Wisniewski. (*Id.* ¶¶ 16, 91). Defendant Eric Urruti was hired in 2008 and initially served as "Director of Research and Development" for Schott N.A. (*Id.* ¶¶ 33, 35). At some point, Urruti was "promoted to the position of Vice President" for Schott N.A. (*Id.* ¶ 35).

---

[2]     Plaintiffs filed an Unredacted Amended Complaint (Doc. 19) under seal, per my July 20, 2018 Order (Doc. 21). The allegations in the redacted Amended Complaint are sufficient to resolve the instant motions.

Plaintiffs allege that between July 2008 and April 2016, Urruti subjected Sincavage "to repeated, violent sexual assaults in the workplace." (*Id.* ¶¶ 59, 62). Urruti attacked Sincavage by "grabb[ing] Ms. Sincavage's inner thigh and genitals" during a Research and Development meeting one month after his date of hire, "choking Ms. Sincavage and/or blocking her airway with his hands and other devices," and committing "other physical assaults and sexual acts." (*Id.* ¶¶ 63, 67-68). "Ms. Sincavage consistently resisted and begged Mr. Urruti to cease his attacks[,]" and Urruti in response "repeatedly threatened Ms. Sincavage and warned her against reporting his attacks. Mr. Urruti threatened to kill Ms. Sincavage[.]" (*Id.* ¶¶ 70-71). In one encounter, "Urruti entered Ms. Sincavage's office and closed the door behind him[,]" then proceeded to sexually assault her until he "heard someone approaching." (*Id.* ¶ 73).

Starting in July 2008, Sincavage reported Urruti's attacks to Schott N.A.'s Director of Sales and Marketing, who then reported the attacks to Director of Human Resources Gerald Barnes. (*Id.* ¶¶ 78-79). Around the same time, Wisniewski also "reported sexual harassment by Eric Urruti against Ms. Sincavage to [Barnes.]" (*Id.* ¶ 82). However, Barnes did not "interview[] or even ask Ms. Sincavage about the sexual attacks." (*Id.* ¶ 83). Sincavage again reported the sexual attacks to Barnes in May 2009, after which her complaints were forwarded to Schott N.A.'s President, its Vice President of Human Resources, and Schott A.G.'s Human Resource Representative. (*Id.* ¶¶ 84-89). After "continu[ing] to seek the intervention and protection of [Barnes]," Barnes finally held an offsite meeting with Sincavage and Wisniewski to discuss Urruti's sexual attacks. (*Id.* ¶¶ 90-95). Despite this meeting, neither Barnes nor Schott did anything "to address or correct the situation and no action was taken . . . to protect Ms. Sincavage from further attacks." (*Id.* ¶¶ 96).

Instead, Wisniewski took actions to protect Sincavage "including removing her from any professional support of Mr. Urruti's organization, moving Ms. Sincavage to an office adjacent to his own and assigning Ms. Sincavage a male office mate, attending all Research and Development meetings with Ms. Sincavage, walking her to her car after

working hours, demanding that she contact an outside attorney[,] and accompanying her to employer offsite activities." (*Id.* ¶ 97). Barnes was aware of Wisniewski's actions but did nothing to protect Sincavage, even after Wisniewski "continued to report his concerns" and after Urruti "protested the steps that Mr. Wisniewski took to attempt to protect" Sincavage. (*Id.* ¶¶ 98-100). Barnes merely suggested in an email to Sincavage that she take "violent action against Mr. Urruti." (*Id.* ¶ 102).

Retaliation ensued against Wisniewski. After Wisniewski reported his concerns to Barnes, Barnes reduced Wisniewski's annual raises (which had been previously approved by his supervisors), limited the meetings he could attend even though he was Controller of the Duryea facility, and "interfer[ed] with his effectiveness in his role as the site controller." (*Id.* ¶ 103). After Wisniewski renewed his concerns with Barnes's replacement, Amy Acri, Acri "warned" him "that if he continued to raise his concerns, she would be 'unable to protect him' from" Schott managers. (*Id.* ¶¶ 105-07). "[C]ontinuing to raise . . . concerns about the sexual assaults on Ms. Sincavage," Acri said, "would result in serious, negative actions by [Schott] involving [Wisniewski's] continued employment and ability to find subsequent employment." (*Id.* ¶ 108). Both Acri and Wisniewski's immediate supervisor (a Schott A.G. employee in Germany) told Wisniewski he 'had no future' with [Schott] and would not be given a 'fair chance' going forward." (*Id.* ¶ 109). Ultimately, Acri threatened that if Wisniewski "did not negotiate a reduction of his severance, agree not to file a complaint against [Schott], and leave the company without further challenge to its past practices, he would be fired, his unemployment would be contested, and [Schott] would surreptitiously ensure he was unemployable after his termination." (*Id.* ¶ 112).

"Despite these threats," Plaintiffs "continued to complain about the extreme sexual harassment" Urruti committed against Sincavage, all the way through 2016. (*Id.* ¶ 118). So on April 14, 2016, Wisniewski's supervisor gave him "an extremely negative review," which he confided in Wisniewski he "had been ordered to provide." (*Id.* ¶¶ 119-20). Wisniewski contested the negative review with Acri, and Acri again cautioned against complaining about sexual harassment. (*Id.* ¶ 121). Wisniewski complained that he was being retaliated against

anyway, and when word got to Schott that "Plaintiffs were taking legal action against [Schott] for retaliation and sexual harassment," Schott terminated Wisniewski. (*Id.* ¶¶ 122-27). Schott employees with knowledge of the retaliatory firing said that Wisniewski was terminated because he committed fraud, though. (*Id.* ¶¶ 195-201). Sincavage "had no choice but to leave her position with [Schott] on the day Mr. Wisniewski was terminated and to accept a position with far less future potential," given the severity of Urruti's attacks and Schott's failure to protect her. (*Id.* ¶¶ 129-30). The Equal Employment Opportunity Commission subsequently "issued Plaintiffs Notices of Right to Sue on July 13, 2018." (*Id.* ¶ 12). And "more than one year has passed since Plaintiffs requested that their Charges be dual-filed with the [Pennsylvania Human Relations Commission.]" (*Id.* ¶ 13).

Plaintiffs initially filed this action on April 2, 2018, in the Luzerne County Court of Common Pleas. (Doc. 1-2). Schott N.A. removed to this Court on the basis of diversity of citizenship per 28 U.S.C. § 1332(a)(3) on June 19, 2018. (Doc. 1). Plaintiffs filed their Amended Complaint on July 17, 2018 (Doc. 16), which sets forth ten counts alleging violations of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, assault, battery, false imprisonment, intentional infliction of emotional distress, negligent hiring and supervision, defamation, breach of contract, and violations of the Pennsylvania Wage Payment and Collection Law. (*Id.*).

Urruti filed a Motion to Dismiss (Doc. 24) the Pennsylvania Human Relations Act claim pled against him, while Schott N.A. filed a Motion to Dismiss (Doc. 23) the intentional tort claims, and the negligent hiring and supervision claim as to Wisniewski. Schott A.G. filed a Motion to Strike Returns of Service (Doc. 31), and Plaintiffs responded with a Motion for Leave to Serve Process by Alternative Service (Doc. 34) in the event service of process was insufficient..

All of these motions have been fully briefed and are now ripe for review.

## II. Discussion

**A.      Defendants' Motions to Dismiss**

1.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, a court considers the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, I may consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Am. Corp. Soc. v. Valley Forge Ins. Co.,* 424 Fed. App'x 86 (3d Cir. 2011) (citing *Pension Benefit Gaur. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). I may also consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). At bottom, documents may be examined by a court when ruling on a motion to dismiss when the plaintiff had proper notice of the existence of the documents. *Id.* I need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

2.      Urruti's Motion to Dismiss

Urruti moves to dismiss only Count Two of the Amended Complaint, which alleges he aided and abetted Schott N.A. and Schott A.G.'s discrimination in violation of the Pennsylvania Human Rights Act ("PHRA"). In support, Urruti argues that he cannot be held individually liable under the PHRA because he was not a supervisor. (Doc. 25 at 5-9).

The PHRA differs from Title VII in that certain employees may be held individually liable for discrimination. 43 P.S. § 955(e); *see Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998). Section 955(e) provides the "sole basis of individual liability in the PHRA." *Santai v. Fred Beans Ford, Inc.*, No. 10-2367, 2011 WL 3606836, at *3 (E.D. Pa. Aug. 16, 2011). That section forbids "any person, employer, . . . or employee, to aid, abet, incite, compel or coerce the doing of any act declared . . . to be an unlawful discriminatory practice." 43 P.S. § 955(e). A co-worker is not a "proper defendant" under Section 955(e) because "[a] non-supervisory employee who engages in discriminatory conduct cannot be said to 'intend' that his employer fail[ed] to [take remedial action]." *Dici v. Pennsylvania*, 91 F.3d 542, 553 (3d Cir. 1996) (quoting *Tyson v. CIGNA Corp.*, 918 F. Supp. 836, 841 (D.N.J. 1996)). However, "in the appropriate factual scenario, an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory . . . for his own direct acts of discrimination." *Davis*, 20 F. Supp. 2d at 887 (citing *Dici*, 91 F.3d at 552-53).

Here, Plaintiffs allege that Urruti was a senior manager and, eventually, Vice President at the Duryea facility. (Doc. 16 at ¶¶ 16, 33, 35, 46, 60, 141). Plaintiffs also allege he "occupied a position of authority and control over Ms. Sincavage." (*Id.* ¶ 145). These allegations, in combination with the allegations of sexual harassment, suffice to state a PHRA claim against Urruti. *See Santai v. Fred Beans Ford, Inc.*, No. 10-2367, 2011 WL 3606836, at *3 (E.D. Pa. Aug. 16, 2011) (denying motion to dismiss because supervisory defendants can be found liable for their own direct acts of discrimination); *Frye v. Robinson Alarm Co.*, No. CIV. A 97-0603, 1998 WL 57519, at *5 (E.D. Pa. Feb. 11, 1998) (plaintiff stated Section 955(e) claim against a defendant "vice president of operations" who grabbed, kissed, and hugged the plaintiff in an offensive manner); *Glickstein v. Neshaminy Sch. Dist.*,

No. CIV. A. 96-6236, 1997 WL 660636, at *12 (E.D. Pa. Oct. 22, 1997) (allegations that the defendant was the plaintiff's direct harasser and supervisor stated Section 955(e) claim against the defendant).

Urruti argues in response that he must have been "empowered by the employer to take tangible employment actions against" Sincavage to be a supervisor, *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013), and Plaintiffs' allegations that Urruti protested but did not stop Wisniewski's actions to protect Sincavage mean Urruti was not a supervisor. (Doc. 25 at 6-8). Urruti further notes that Plaintiffs allege Schott A.G. employees have the final say "regarding many human resources activities." (Doc. 16 at ¶ 48). Assuming without deciding that the Title VII "supervisor" standard from *Vance* for an employer's vicarious liability applies to Section 955(e) of the PHRA (which instead imposes direct liability on "employees"), Urruti's argument still fails. Plaintiffs' allegation that Urruti held a position of authority and control over Sincavage is enough to plausibly suggest Urruti could take tangible employment actions against her, even if Plaintiffs also allege Urruti did not thwart Wisniewski's protective measures. Urruti could have protested Wisniewki's actions but declined to exercise his supervisory authority, for example. And allegations that Wisniewski could take tangible employment action against Sincavage and that Schott A.G. made final decisions do not mean that Urruti was not also her supervisor.

Urruti's Motion to Dismiss will therefore be denied.

3.   Schott N.A.'s Motion to Dismiss

   a.   *Vicarious Liability for Intentional Torts*

Schott N.A. first seeks to dismiss Counts Three through Five of the Amended Complaint on the ground that it cannot be vicariously liable for Urruti's intentional torts committed outside the scope of his employment.[3] (Doc. 23-3 at 7-13). Under Pennsylvania

---

[3]   Schott N.A. also moves to dismiss Count Six ("Intentional Infliction of Emotion Distress") on this basis, but Plaintiffs do not allege vicarious liability in Count Six. (Doc. 16 at ¶¶ 242-48).

law, an employer may be vicariously liable for an employee's intentional torts if they are committed during the course of and within the scope of employment. *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998). "This is not the case, however, where 'the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason,' at which point, 'the employer is not responsible as a matter of law.'" *Fuhrman v. Quill Corp.*, No. 1:09-CV-00841, 2010 WL 411698, at *7 (M.D. Pa. Jan. 27, 2010) (quoting *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979)). "If an assault is committed for personal reasons or in an outrageous manner," for example, "it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." *Fitzgerald*, 410 A.2d at 1271.

In *Fuhrman v. Quill Corp.*, both the plaintiff and her alleged sexual harasser were employed at the same workplace, but by different employers. 2010 WL 411698, at *2. The plaintiff argued that the related employers' "failure to intercede following her complaints" of sexual assault to her supervisor showed that the related employers "acquiesced to their employees' behavior." *Id.* at *7. The court rejected the plaintiff's argument, noting that "[a]lthough the harassment and assault . . . occurred within the authorized time and space limits of the . . . employees' employment, it is difficult to see how it was motivated by a desire to serve [the employers] or was the type of conduct for which the employees were hired." *Id.*

Here, the facts and argument are similar. Plaintiffs allege and argue that Schott N.A.'s failure to prevent Urruti's sexual assaults means it is vicariously liable for them. In support, Plaintiffs cite to cases involving sexual abuse committed by health care workers. (*See* Doc. 27 at 7 (citing *Barry ex rel. Cornell v. Manor Care, Inc.*, No. CIV. A. 97-5883, 1999 WL 257663, at *3) (E.D. Pa. Apr. 29, 1999)). But Plaintiffs do not allege that Urruti's intentional torts were "actuated by an intent" to serve Schott or otherwise committed as part of his employment. This is why *Barry ex rel. Cornell*, for example, is inapposite: a jury could find that a "nursing assistant" was "acting within the scope of her employment when she

10

allegedly assaulted" her patient while changing the patient's diaper. 1999 WL 257336, at *4. It was not part of Urruti's alleged job duties to be in close physical contact with Sincavage, unlike the situation of a health care worker and patient. *Cf. Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 494 (Pa. Super. Ct. 1998) (plaintiff failed to produce evidence that the defendant laundry worker's assault "was even remotely related to the kind and nature of employment that he was employed to perform, since in no way did his employment require or even anticipate the use of force against another person"). Similarly, Plaintiffs' reliance on *Shavers v. Sunfresh Food Serv., Inc.*, No. 09-1377, 2010 WL 2595558 (W.D. Pa. June 2, 2010) is misplaced. In that case, the plaintiff alleged that the employee's racist attack "was, in fact, 'actuated by the purpose of serving the owners/employer and their racial bias.'" *Id.* at *3 (quoting the complaint). Here, in contrast, there are no allegations that Urruti's conduct was actuated by an intent to serve Schott.

Finally, I am mindful that decisions such as *Faragher v. City of Boca Raton* cast some doubt on holding a supervisor's sexual harassment outside the scope of employment. 524 U.S. 775, 797-98 (1998) (noting justifications for holding sexual harassment within the scope of employment). Pennsylvania courts, however, have taken the view that such conduct will almost always fall outside the scope of one's employment. *Doe 6 v. Penn. State Univ.*, 982 F. Supp. 2d 437, 441-46 (E.D. Pa. 2013) (surveying Pennsylvania law); *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 494 (Pa. Super. Ct. 1998). I am bound to apply that view in this case. *See U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996).

Given Urruti was acting outside the scope of his employment, Plaintiffs point to the Restatement (Second) of Agency § 219 (1958) as a fallback for imposing vicarious liability on Schott N.A. (Doc. 27 at 7-8). Section 219(2)(b) provides: "A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . the master was negligent or reckless[.]"

The argument for Schott N.A.'s vicarious liability on this basis also falls short. Pennsylvania courts have not adopted this section of the Restatement in the way Plaintiffs

interpret it. *See, e.g.*, *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 419-20 (Pa. 1968) (applying Section 213 of the Restatement ("Principal Negligent or Reckless"), not Section 219(2)(b), where the plaintiff conceded that the defendant's battery was outside the scope of his employment). Section 219(2)(b) refers to an employer's liability in negligence for the torts of its employees acting outside the scope of employment, not an employer's vicarious liability for the torts themselves. *See id.*; *Jensen v. Potter*, 435 F.3d 444, 452-53 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("Typically, the plaintiff in a coworker harassment case argues for direct liability on a theory of 'negligent failure to discipline or fire, or failure to take remedial action upon notice of harassment.'" (citing *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 106 (3d Cir. 1994) (citing, in turn, Section 219(2)(b))); *accord Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287 n.9 (D. Conn. 2013); *Gonzalez v. City of New York*, 17 N.Y.S.3d 12, 15 (N.Y. App. Div. 2015) (citing Sections 219(2) and 213 for the "theory of negligent hiring and retention" and distinguishing it from *respondeat superior* liability under Section 219(1)). That means Schott's liability for Urruti's intentional torts is properly grounded in negligence—which is what Plaintiffs allege in Count Seven of the Amended Complaint ("Negligent Hiring, Retention and Supervision"). Schott N.A. cannot, therefore, be held vicariously liable for Urruti's intentional torts.[4]

Accordingly, Schott N.A.'s Motion to Dismiss will be granted as to Counts Three, Four, and Five of the Amended Complaint.

### b. *Intentional Infliction of Emotional Distress*

Schott N.A. next moves to dismiss Count Six of the Amended Complaint, which

---

[4]    Plaintiffs also point to Sections 317 and 344 of the Restatement (Second) of Torts (1965) as supporting Schott N.A.'s "direct liability." (Doc. 27 at 10-11). However, Section 344 does not apply here as Sincavage is not alleged to have been a "member[] of the public" at the Duryea facility for "business purposes," and Section 317 mirrors the negligence cause of action outlined in Section 213 of the Restatement (Second) of Agency.

alleges intentional infliction of emotional distress, asserting that its conduct does not rise to the level of "extreme and outrageous behavior." (Doc. 23-3 at 13-15). It is true that courts applying Pennsylvania law have infrequently found "conduct in the employment context [to rise to] the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (citing *Rinehimer v. Luzerne Cty. Cmty. Coll.*, 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)). Typically, for an employer's conduct to be deemed sufficiently outrageous, the employer must have "engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.* at 395-96 (citing *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988) (claim stated where employer sexually harassed plaintiff and retaliated by isolating her in the office)). But the Pennsylvania Supreme Court has cautioned that "consideration of retaliation" in this context "is one of a number of factors" to be considered, thus allowing "for the rare case in which a victim of sexual harassment is subjected to blatantly abhorrent conduct, but in which no retaliatory action is taken." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998); *see Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990) ("The extra factor that is *generally* required is retaliation for turning down sexual propositions." (emphasis added)).

Here, although Plaintiffs do not allege Schott N.A. retaliated against Sincavage beyond her constructive discharge, Plaintiffs do allege sufficient "extra factors." For one, Plaintiffs allege that Schott N.A. retaliated against Wisniewski, the only one protecting Sincavage from Urruti. Additionally, Plaintiffs allege that Human Resources Director Gerald Barnes, after learning of the sexual harassment, sent Sincavage emails suggesting that she use "violent and deadly force against" Urruti rather than investigating the matter himself or protecting Sincavage. (Doc. 16 ¶¶ 101-02). Urruti's sexual harassment of Sincavage, combined with Schott N.A.'s flippant response to Sincavage and its retaliation against Wisniewski, could "lead an average member of the community to exclaim, 'Outrageous!'" *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 312 (M.D. Pa. 1988). Thus, taking these allegations as true and viewing them in the light most favorable to Plaintiffs, I find that

Sincavage has stated a claim against Schott N.A. for intentional infliction of emotional distress.

Schott N.A.'s Motion to Dismiss will therefore be denied as to Count Six of the Amended Complaint.

<u>*c.*</u>    <u>Negligent Hiring</u>

Schott N.A. also moves to dismiss Count Seven of the Amended Complaint as to Wisniewski, which alleges negligent hiring, retention, and supervision. Schott N.A. contends Wisniewski has not stated a claim because there are no allegations that Schott N.A. "knew or had reason to know that any of the alleged employees had a propensity to retaliate against people who reported sexual harassment." (Doc. 23-3 at 17). Under the Restatement (Second) of Agency, "[a] person conducting an activity through servants . . . is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the supervision of the activity." Restatement (Second) of Agency § 213(c) (1958); *Berezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. Ct. 2000) (Section 213 restates Pennsylvania tort law). This section, combined with Section 317 of the Restatement (Second) of Torts, "impose[s] on an employer the duty to exercise reasonable care in selecting, supervising, and controlling employees." *R.A. v. First Church of Christ*, 748 A.2d 692, 607 (Pa. Super. Ct. 2000); *see Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968) ("To fasten liability on an employer under Section 317, it must be shown that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of his employee.").

Wisniewski has adequately pled a negligence claim against Schott N.A. The allegations in the Amended Complaint, taken as true, establish that Schott N.A. was aware that Wisniewski reported Urruti's sexual harassment up the chain, was unlawfully retaliated against, complained about the retaliation to higher-ups, and suffered further retaliation. (Doc. 16 at ¶¶ 104-18). Thus, Schott N.A. knew "of the necessity for exercising control of" its employees retaliating against Wisniewski, yet failed to control them. *Dempsey*, 246 A.2d

at 422.

Schott N.A.'s Motion to Dismiss Count Seven of the Amended Complaint as to Wisniewski will be denied.

### d.    Defamation

Schott N.A. finally moves to dismiss Count Eight of the Amended Complaint, which alleges that Schott N.A. defamed Wisniewski by telling third parties, less than one year prior to the filing of the original complaint, that the reason for his discharge was accounting fraud. (Doc. 23-3 at 18-21). Schott N.A. argues that Wisniewski is required to "precisely allege the time, place and circumstances of allegedly defamatory publication(s)" as well as "facts showing that the publishers purportedly were acting within the course and scope of alleged employment," facts indicating the applicability of defenses like conditional privilege and the statute of limitations, "and any elements of special damage." (*Id.* at 19-21).

First, contrary to Schott N.A.'s assertion, Federal Rule of Civil Procedure 9(f) does not require that Wisniewski allege defamation with particularity. *See O'Brien v. Twp. of Ross*, No. CIV.A. 14-633, 2014 WL 3955787, at *2 (W.D. Pa. Aug. 13, 2014). That means Wisniewski need not specifically allege the "time, place and circumstances" of the alleged defamation or allege facts to help Schott N.A. flesh out its statute of limitations defense. Second, Wisniewski alleges the defamatory statements were made with malice, i.e. with knowing falsity, so no conditional privilege would apply. *Id.* (citing *Manning v. Flannery*, 528 F. App'x 141, 143 (3d Cir. 2013)). And third, Wisniewski need not plead special damages: "Words imputing . . . business misconduct . . . constitute slander *per se*." *Tuman v. Genesis Assocs.*, 935 F. Supp. 1375, 1392 (E.D. Pa. 1996) (citing *Chicarella v. Passant*, 494 A.2d 1109, 1115 n.5 (Pa. Super. Ct. 1985)). The allegations in the Amended Complaint thus give Schott N.A. "fair notice" of the grounds upon which Wisniewski's defamation claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Schott N.A.'s Motion to Dismiss will be denied as to Count Eight.

**B.    Schott N.A.'s Motion to Sever**

Schott N.A. also moves to sever Wisniewski's claims from Sincavage's on the ground that Plaintiffs' joinder was improper under Federal Rule of Civil Procedure 20(a). (Doc. 30 at 7-10). "The language of Rule 20 that is pertinent to this matter is plain and unambiguous." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). Joinder of plaintiffs is proper if "(A) they assert any right to relief jointly, severally, or in the alternative . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Accordingly, "Rule 20 permits 'the joinder of a person who has some interest in an action . . . , even when that interest is not so strong as to require his joinder' under Rule 19." *Hagan*, 570 F.3d at 153 (quoting *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980)).

Joinder of Plaintiffs is proper here. Wisniewski's claims—even his claims for breach of contract, lost wages, and defamation—arise from the same series of occurrences as Sincavage's. As Plaintiffs note, the occurrences underlying their claims are Urruti's sexual assaults, Plaintiffs' complaints, and Schott N.A.'s response. (Doc. 33 at 1). Schott N.A. could only have retaliated against and spread false information about Wisniewski if he was fired because he complained of Urruti's sexual assaults. Wisniewski's claims against Schott N.A. thus flow from Urruti's sexual assault of Sincavage. A common question of fact exists (whether Urruti sexually assaulted Sincavage), and all claims arise from that question of fact and the series of occurrences that flowed from it, so joinder is proper. *See Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D. Pa. 2001) (separate incidences of discrimination that flow from the same policy, pattern, or practice are "logically related and arise out of the same series of transactions or occurrences"); *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 6 (E.D. Pa. 1979) ("The claims here are not so diverse and multiple, centered as they are around a central theme of a company discriminatory policy,

16

that a reasonable jury cannot segregate the evidence and decide the separate claims.").

Schott N.A.'s Motion to Sever will therefore be denied.

## C.    Schott A.G.'s Motion to Strike and Plaintiffs' Motion for Alternative Service

The last dispute is over service of process on Defendant Schott A.G., a German corporation. Schott A.G. moved to "strike" the returns of service that purport to show it received service of process through Schott N.A. and Schott N.A.'s agents. Plaintiffs oppose this motion, and also moved to serve process on Schott A.G. in an alternative manner—by serving process on its American counsel.

First, a procedural digression is warranted. Regardless of how it is phrased, an objection to service of process is governed by Rule 12(b)(5). *See Torres v. Gaines*, 130 F. Supp. 3d 630, 634 (D. Conn. 2015) (construing "a motion to dismiss for lack of personal jurisdiction" as a Rule 12(b)(5) motion); *Martin v. Stokes*, 623 F.2d 469, 474 n.8 (6th Cir. 1980) ("[T]here is no longer a 'motion to quash' as defendants filed; technically, the proper motion would have been a motion to dismiss for insufficiency of service under Rule 12(b)(5)."); *cf. Patterson v. Whitlock*, 392 F. App'x 185, 192 (4th Cir. 2010) (construing a "Motion to Quash" as a Rule 12(b)(4) motion). Rule 12(f), which permits a motion to strike, by its terms applies only to pleadings, and a court's inherent authority to strike documents other than pleadings is wielded only in rare circumstances. Fed. R. Civ. P. 12(f); *see In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 639 F. App'x 874, 877 (3d Cir. 2016) (district courts can strike sham filings); *Gaskins v. Baltimore City Pub. Sch.*, 2016 WL 192535, at *3 (D. Md. 2016), *aff'd*, 649 F. App'x 307 (4th Cir. 2016) (declining to strike a motion to dismiss while recognizing a district court's inherent authority strike documents other than pleadings); *Ojelade v. Unity Health Care, Inc.*, 962 F. Supp. 2d 258, 262 (D.D.C. 2013) (denying motion to strike returns of service under Rule 12(f) even though service was insufficient).

So I will construe Schott A.G.'s "Motion to Strike Returns of Service" (Doc. 31) as a motion to dismiss for insufficient service of process brought under Rule 12(b)(5). But, Schott

A.G. also raises the issue of personal jurisdiction. (*See id.*). Because the issues of service of process and personal jurisdiction are "closely interrelated," particularly in this case, I will also construe Schott A.G.'s Motion to Strike as a motion to dismiss of lack of personal jurisdiction brought under Rule 12(b)(2). 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed.) (noting that in the context of overlapping Rule 12(b)(2) and (5) motions, courts "determine the merits of the real issue before them regardless of how the motion is designated and nothing appears to turn on the misdesignation").

I will start with Plaintiffs' Motion for Alternative Service and Schott A.G.'s Motion to Strike construed as a Rule 12(b)(5) motion. The burden is on Plaintiffs to show that proper service of process was made. *See Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993). Federal Rule of Civil Procedure 4 governs service of process. Rule 4(h) provides, in relevant part, that "[u]nless federal law provides otherwise . . . , a domestic or foreign corporation . . . must be served" in one of two ways. The first way applies if service is to be made "in a judicial district of the United States" and requires the plaintiff to follow the state's service of process rules or "deliver[] a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1). The second way applies only if service is to be made abroad—not simply if the defendant is a foreign corporation—and requires the plaintiff to follow the Rule 4(f) procedures for serving a foreign individual. Fed. R. Civ. P. 4(h)(2). Because Plaintiffs have so far only attempted and moved to serve Schott A.G. in the United States, I do not delve into Rules 4(h)(2) and 4(f). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (effecting service in the United States on a foreign corporation does not trigger the Hague Convention).

The question underpinning Plaintiffs' motion, therefore, is whether service on Schott A.G.'s American counsel would comply with Rule 4(h)(1). Under the facts of this case, Rule 4(h)(1) requires that if service is to be made on Schott A.G. in the United States, it must be

made on an authorized agent or some corporate officer or manager at Schott A.G.'s regular place of business. *See* Fed. R. Civ. P. 4(h)(1); Pa. R. Civ. P. 424 (using language similar to that in Fed. R. Civ. P. 4(h)(1)(B)). Plaintiffs have not shown, however, that Schott A.G.'s American counsel is authorized to accept service on its behalf. *See, e.g.*, *Kamau v. Sacred Heart Health Sys.*, No. 3:12CV207-MCR/CJK, 2013 WL 6816017, at *2 (N.D. Fla. Dec. 24, 2013) (quashing service on the defendant corporation under Rule 4(h) because the plaintiff served the corporate "defendant's legal counsel and not [its] registered agent"); *Trzcinski v. Prudential Prop. & Cas. Ins. Co.*, 597 A.2d 687, 689 (Pa. Super. Ct. 1991) (service of process on corporation's regular defense counsel insufficient under Pa. R. Civ. P. 424).

Plaintiffs' Motion for Alternative Service under Rule 4(f)(3) will therefore be denied. Rule 4(f)(3) does not apply in this situation, and service on Schott A.G.'s American counsel would not satisfy the Rule that does apply—Rule 4(h)(1).

This does not mean Schott A.G.'s Rule 12(b)(5) motion necessarily succeeds, however. It is true that service has only been effected on Schott N.A. and its agent for service of process, CSC—not Schott A.G. or its expressly authorized agents. (*See* Docs. 28, 44, 46). But Plaintiffs argue that Schott N.A. is Schott A.G.'s "involuntary agent," such that service on Schott N.A. effects service on Schott A.G. (Doc. 47 at 7-15). This argument combines the issues of service of process and personal jurisdiction: if Schott N.A. is Schott A.G.'s involuntary agent or "alter ego," then "the two companies operate de facto as a single, organic entity" and this Court can exercise general personal jurisdiction over Schott A.G. via service of process on Schott N.A. *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 569 (M.D. Pa. 2009) ("*Chocolate I*").

That leads to Schott A.G.'s Motion to Strike construed as a Rule 12(b)(2) motion. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all

factual disputes drawn in its favor." *Id.*

Plaintiffs assert this Court has "alter ego jurisdiction" over Schott A.G., the applicability of which depends on whether:

> (1) the parent owns all or a significant majority of the subsidiary's stock,
> (2) commonality of officers or directors exists between the two corporations,
> (3) the corporate family possesses a unified marketing image, including common branding of products,
> (4) corporate insignias, trademarks, and logos are uniform across corporate boundaries,
> (5) corporate family members share employees,
> (6) the parent has integrated its sales and distribution systems with those of its subsidiaries,
> (7) the corporations exchange or share managerial or supervisory personnel,
> (8) the subsidiary performs business functions that would ordinarily be handled by a parent corporations,
> (9) the parent uses the subsidiary as a marketing division or as an exclusive distributor, and
> (10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

*Chocolate I*, 602 F. Supp. 2d 538, 569-70 (M.D. Pa. 2009) (citing *Simeone ex rel. Simeone v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005)). "The alter-ego test for personal jurisdiction is 'less stringent' than the test for piercing the corporate veil to impose liability." *Bell v. Fairmont Raffles Hotel Int'l*, No. CIV.A. 12-757, 2013 WL 6175717, at *2 (W.D. Pa. Nov. 25, 2013) (quoting *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010)). "No single factor is dispositive, and the court may consider all relevant evidence to determine whether the parent exercises actual control over a subsidiary beyond that which is characteristic of a usual parent-subsidiary relationship." *Chocolate I*, 602 F. Supp. 2d at 570. For example, where a foreign parent "vertically manage[d]" a group of related "business units aligned with product groups rather than corporate boundaries," shared senior executive personnel with subsidiaries, and allowed its senior executives to "exercise[] centralized control over 'the day-to-day management' of all" related entities, alter ego jurisdiction was found to exist. *In*

20

*re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 614 (M.D. Pa. 2009) ("*Chocolate II*"). Such "dual responsibilities of senior executives provide strong evidence of an alter ego relationship." *Id.* (citing *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 289 (E.D.N.Y. 2001)).

I find that Plaintiffs have made a prima facie showing of alter ego jurisdiction. Plaintiffs allege in their Amended Complaint that many of the ten factors are met here: Schott N.A. is a wholly-owned subsidiary of a holding company wholly-owned by Schott A.G. (Doc. 16 at ¶¶ 26-27); the company as a whole is divided into product-based business units, which are controlled by Schott A.G. senior executives (*id.* ¶¶ 29-32, 34, 44); Schott N.A. and Schott A.G. share the Schott name, employees, and supervisors (*see id.*); and Schott A.G. controls Schott N.A.'s routine operations (*id.* ¶¶ 29-32, 34, 44, 47-51). Just as in *Chocolate II*, where parent senior executives exercised centralized control over wholly-owned subsidiary business units, here too it is alleged that Schott A.G. exercises centralized control over subsidiary business units and the Duryea facility through its senior executives and employees. The Amended Complaint states that Schott A.G. employees have the final say over routine human resources, production, investment, and budgeting decisions at the Duryea facility, for instance. (Doc. 16 at ¶¶ 47-48). This is the sort of "failure to adhere to corporate boundaries" that often results in a finding of alter ego jurisdiction. *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 324 (W.D. Pa. 2010); *see Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-23 (2d Cir. 1984); *In re Latex Gloves Prods. Liab. Litig.*, No. MDL 1148, 2001 WL 964105, at *4-6 (E.D. Pa. Aug. 22, 2001).

Schott A.G.'s Motion to Strike, construed as both a Rule 12(b)(2) and (5) motion to dismiss, will therefore be denied. The proper course in this situation, bearing in mind that it is Plaintiffs' eventual burden to "establish jurisdiction by a preponderance of the evidence," is to permit Plaintiffs to conduct jurisdictional discovery on their alter ego theory. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

### III. Conclusion

For the above stated reasons, all the instant motions will be denied except for Schott N.A.'s Motion to Dismiss, which will be granted in part and denied in part.

An appropriate order follows.


October 5, 2018                                    /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                   United States District Judge